Scott **GRANT** and Thomas J. Grant, d/b/a **Marlatt Battery Division,** Plaintiffs,

v.

**H. J. WHITE, District Director of Internal Revenue, Defendant.**

**Civ. A. No. P–1889.**

United States District Court S. D. Illinois, N. D.

July 22, 1963.

John E. Cassidy, Cassidy & Cassidy, Peoria, Ill., for plaintiffs.

Edward Phelps, U. S. Atty., Springfield, Ill., Louis F. Oberdorfer, Asst. Atty. Gen., Washington, D. C., for defendant.

MERCER, Chief Judge.

Plaintiffs, Scott Grant and Thomas J. Grant, d/b/a Marlatt Battery Division, hereinafter referred to as plaintiffs or Marlatt, as the context requires, filed this complaint for a refund of excise taxes paid on February 10, 1956, in the amount of $9,355.75, with interest on the said amount from the date of payment. A timely claim for refund was disallowed on July 31, 1956.

The original complaint contained a single count. It alleged that on February 9, 1956, defendant collected $9,355.75 from plaintiffs as additional manufacturers' excise tax on automobile parts and accessories pursuant to Section 3403(c) of the Internal Revenue Code of 1939. 26 U.S.C. 1952 Ed. 3403(c). A timely claim for refund was filed and denied by the defendant. That claim was based on the grounds that Section 3403 was void because it was vague and ambiguous, that the revenue agent's determination was contrary to the law and the evidence and that the statute, by failing to set a reasonable standard of taxability, was an unlawful delegation of legislative power to an executive agency of the federal government. The complaint further alleged that, during the period from May 1, 1952, through September 30, 1954, Marlatt manufactured special type batteries under special orders for use in industrial equipment and that such batteries were so designed that no one had ever purchased them for use in vehicles covered by Section 3403(a) and (b) of the Act, and that the deficiency assessment against plaintiffs, to the extent of 90% of the amount thereof, consisted of a tax upon such batteries. Finally the complaint alleged that during the same period Marlatt manufactured farm tractor batteries so made and designed that they would not be purchased for use in vehicles covered by 3403(a) and (b) of the Act, and that the balance of the deficiency assessment of tax was assessed against such tractor batteries.

When this complaint was filed, there was pending in this Court under Docket Number P–1782 a certain cause of action wherein the plaintiff Thomas J. Grant, d/b/a Red Diamond Battery Mfg. Co., was plaintiff and the defendant, District Director of Internal Revenue, was defendant. The Red Diamond case was tried before a jury. The trial ended on December 5, 1957, when the jury returned its verdict finding the issues for the plaintiff and assessing plaintiff's damages at the sum of $45,524.00. No appeal was taken by the District Director from the judgment entered upon that verdict.

The question involved in the Red Diamond case was the question whether or not certain batteries manufactured by Red Diamond for sale to Barber-Greene Company and Hyster Company for use in industrial equipment manufactured by Barber and Hyster and on batteries specially manufactured for use in farm tractors were subject to manufacturer's excise tax as automobile parts and accessories under the provisions of Section 3403 of the Internal Revenue Code of 1939. The taxable period in Red Diamond was of greater duration than the

taxable period involved in Marlatt, but the period involved in Marlatt is encompassed within the dates delimiting the Red Diamond taxable period.

After the decision in Red Diamond plaintiffs filed a second count by an amendment to their complaint alleging the facts summarized in the above preceding paragraph, and realleging the facts alleged in the first count of their original complaint. Count two further alleged that Marlatt was engaged in the same type manufacturing business as Red Diamond Battery Company, the only difference being that Red Diamond is a sole proprietorship owned by Thomas J. Grant and located in Peoria, Illinois, while Marlatt is a partnership owned by Thomas J. Grant and Scott Grant and is located in Danville, Illinois. Count two further alleged that the batteries involved in this suit are the same in all respects as those involved in Red Diamond. Count two of the complaint continued, alleging that the parties to this case and Red Diamond are the same or in privity with each other, that the taxable period involved is embraced within the taxable period in Red Diamond, and that the defendant is collaterally estopped by reason of the verdict and judgment of this Court in Case No. P–1782 to re-litigate and re-try the same issues of law and fact in the instant proceeding.

The case is under advisement for decision upon a stipulation of the parties and the affidavits of plaintiff, Thomas J. Grant, and John E. Cassidy, Jr., the attorney for plaintiffs in this case and the attorney who represented the plaintiff in Red Diamond. Since those affidavits, in effect, merely supplement the stipulation and are not controverted the facts may be found therefrom as follows.

During the taxable period from May 1, 1952, to September 30, 1954, plaintiffs, d/b/a Marlatt Battery Division, were engaged in the business of manufacturing storage batteries. Generally speaking, they manufactured three types of batteries, namely, batteries for sale on the general market, batteries manufactured under specifications prescribed by a customer, Hyster Company, which Hyster used as a component of industrial equipment, and batteries specially designed by plaintiffs for use in farm tractors. There is no issue as to the first category. In the period involved, plaintiffs filed timely excise tax returns and paid excise taxes due upon all batteries manufactured for sale to the general market.

In June, 1955, defendant made an assessment of additional excise taxes against plaintiffs, based upon the claim of defendant that the batteries manufactured for Hyster and the batteries manufactured for use in farm tractors were subject to the assessment of excise taxes under the provisions of Section 3403(c) of the Code. The claimed deficiency, with interest, in the aggregate amount of $9,355.75, was paid on February 10, 1956. Their claim for a refund having been denied, this suit was filed.

Hyster Company was a manufacturer of various types of industrial equipment and machinery. It manufactured no products which were subject to the excise tax provisions of subsections (a) and (b) of the Code. All batteries manufactured by Marlatt and sold to Hyster were used as components in the manufacture of Hyster's products.

All batteries manufactured for Hyster were constructed pursuant to specifications drawn by Hyster. Such batteries were never stocked by Marlatt as items of general inventory. On the contrary, all such batteries were manufactured to fill previously received, specific orders from Hyster.

Hyster was also a customer of Red Diamond. All Hyster batteries, whether manufactured by Marlatt or Red Diamond, were built to the same specifications. Certain component parts of these batteries of Marlatt manufactury were purchased by Marlatt from Red Diamond.

Plaintiffs designed a battery specifically for use in farm tractors. All such batteries were marked "TRACTOR" and were of a cheaper construction and design than were Marlatt batteries manufactured for sale on the general market. Most of Marlatt's tractor batteries were

sold through independent distributors, although some few were sold to farmers directly from the factory. As was the fact with respect to the Hyster design, both Marlatt and Red Diamond manufactured tractor batteries to the same specifications.

Farm tractors are vehicles not subject to excise taxes under the provisions of 3403(a) or (b).

Red Diamond was a sole proprietorship owned and operated by Thomas J. Grant, with its plant and offices at Peoria, Illinois. The batteries involved in the Red Diamond case were identical in manufactury and design to the Marlatt batteries here in issue.

As noted in the summary of count two of this complaint, plaintiffs argue that defendant is collaterally estopped by the Red Diamond decision from defending this suit. A memorandum order has been previously entered holding that defendant is not collaterally estopped by reason of the fact of that decision. The legal conclusions drawn in that memorandum are equally applicable to this case in its present posture. Plaintiffs' contention for a collateral estoppel is rejected.

The determinative issue is: Must Section 3403(c) of the Code of 1939 be construed to impose an excise tax upon the batteries in issue which were manufactured and sold for, and used upon, vehicles which are not taxable under the provisions of subsections (a) and (b) of Section 3403?[1] Section 3403 provides, in pertinent part:

"There shall be imposed upon the following articles sold by the manufacturer, producer, or importer, a tax equivalent to the following percentages of the price for which so sold:

"(a) [Automobile and truck chassis, etc.] Automobile truck chassis, automobile truck bodies, automobile bus chassis, automobile bus bodies, truck and bus trailer and semitrailer

chassis, truck and bus trailer and semitrailer bodies, tractors of the kind chiefly used for highway transportation in combination with a trailer or semitrailer (including in each of the above cases parts or accessories therefor sold on or in connection therewith or with the sale thereof), 8 per centum, except that on and after April 1, 1955, the rate shall be 5 per centum. A sale of an automobile truck, bus, or truck or bus trailer or semitrailer, shall, for the purposes of this subsection, be considered to be a sale of the chassis and of the body.

"(b) Other chassis and bodies, etc. Other automobile chassis and bodies, chassis and bodies for trailers and semitrailers (other than house trailers) suitable for use in connection with passenger automobiles, and motorcycles (including in each case parts or accessories therefor sold on or in connection therewith or with the sale thereof), except tractors, 10 per centum, except that on and after April 1, 1955, the rate shall be 7 percentum. A sale of an automobile, trailer, or semitrailer shall, for the purposes of this subsection, be considered to be a sale of the chassis and of the body.

"(c) [Parts and accessories] Parts or accessories (other than tires and inner tubes and other than radio or television receiving sets) for any of the articles enumerated in subsection (a) or (b), 8 per centum, except that on and after April 1, 1955, the rate shall be 5 per centum. For the purposes of this subsection and subsections (a) and (b), spark plugs, storage batteries, leaf springs, coils, timers, and tire chains, which are suitable for use on or in connection with, or as component parts of, any of the articles enumerated in subsection (a) or (b), shall be con-

[1]. The only reported case construing Section 3403 of the 1939 Code did not consider this precise issue. Dart Truck Co. v. United States, W.D.Mo., 159 F.Supp. 303.

sidered parts or accessories for such articles, whether or not primarily adapted for such use. This subsection shall not apply to chassis or bodies for automobile trucks or other automobiles. Under regulations prescribed by the Commissioner, with the approval of the Secretary, the tax under this subsection shall not apply in the case of sales or parts or accessories by the manufacturer, producer, or importer to a manufacturer or producer of any of the articles enumerated in subsection (a) or (b). If any such parts or accessories are resold by such vendee otherwise than on or in connection with, or with the sale of, an article enumerated in subsection (a) or (b) and manufactured or produced by such vendee, then for the purposes of this section the vendee shall be considered the manufacturer or producer of the parts or accessories so resold. In determining the sale price of a rebuilt automobile part or accessory there shall be excluded from the price, in accordance with regulations prescribed by the Secretary, the value of a like part or accessory accepted in exchange." 26 U.S.C. 1952 Ed. 3403(a), (b), (c).

It seems clear to me that subsection (a) is intended to tax vehicles designed principally for over-the-road use. A like intention is apparent in the provisions of subsection (b). To me it is equally clear that the accessories mentioned in subsection (c) are accessories of the same category as the vehicles and components of vehicles enumerated in (a) and (b). This court so construed the statute in its charge to the jury in Red Diamond, as follows:

"The court further instructs the jury that the plan of taxation embodied in these provisions [of Section 3403] centers around and is related to the motor vehicles enumerated therein. It is their sale that is the principal thing that is taxed and the sale of parts and accessories for such vehicles are taxed because the parts and accessories are in the same field with the vehicles enumerated and used to the same ends. If you find from a preponderance of the evidence in this case that the batteries in issue, or any part of them were not within the same field or category as the articles enumerated, then, as to those batteries, you should find the issues for the plaintiff."

"You are also instructed that storage batteries are not taxable as such, but only those batteries which are suitable for use on or in connection with, or as component parts, as parts or accessories of [the vehicles enumerated in subsection (a) and (b)]."

Defendant's principal argument, reduced to essentials and summarized, is that subsection (c) should be construed to impose a tax upon storage batteries per se. Thus he argues that these batteries, though admittedly designed, specifically, for non-taxable vehicles, might possibly be used in a vehicle of the taxable class and that they are, therefore, taxable. I reject the argument and adhere to the interpretation of the statute adopted in the Red Diamond jury charge.

Applying that interpretation to the stipulated facts, plaintiffs are entitled to judgment. The Hyster batteries were specifically designed and manufactured for an industrial use as component parts of industrial machinery and equipment. All such batteries in issue were so used. The tractor batteries were specifically designed for use in farm tractors, were so marked, and so marketed. Neither of those battery types is within the same field or category as the vehicles enumerated in subsections (a) and (b) of Section 3403. Each is "suitable" for use upon vehicles of the taxable types in approximately the same way as the wheel from a conestoga wagon is suitable for mounting on a sports car.

At the conclusion of the Red Diamond case, it was my opinion that the jury reached the only verdict which, as a matter of law, the evidence permitted. This

case is indistinguishable factually from Red Diamond.

Judgment will be entered against defendant and in favor of plaintiffs in the amount of $9,355.75, with interest thereon at the statutory rate from February 10, 1956, and for their costs of suit. Plaintiffs will prepare and submit a judgment order within a period of ten (10) days from this date.